Filed 10/19/20  Kim v. Kwon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JIN HONG KIM et al., | |
| Plaintiffs and Respondents, | G058252 |
| v. | (Super. Ct. No. 30-2019-01076323) |
| DAVID KWON et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Martha K. Gooding, Judge.  Affirmed.

Park & Lim, S. Young Lim and James E. Adler for Defendants and Appellants.

M.E.T.A.L. Law Group and W. Dan Lee for Plaintiffs and Respondents.

\*      \*      \*

This action arises out of a dispute over who has the right to control the Irvine Baptist Church (the Church).  Jin Hong Kim, Yon Sung Koo, and Soo Eaon Shin

(Plaintiffs) sought a determination under Corporations Code section 9418 that they are each a validly elected or appointed director of the Church. The trial court found in their favor and further found that Defendant David Kwon, having been validly demoted from his position as senior associate pastor and then terminated, is no longer a member of the Church's board of directors. We affirm.

## FACTS

The Church is a California nonprofit religious corporation. Its governing document is the Constitution of Irvine Baptist Church (Church Constitution), the operative version of which was adopted in 2017.[1]

The Church Constitution delineates the duties and powers of various Church personnel, including the senior pastor, assistant pastor, secretary, financial ministry team leader, and head of deacons. It also describes the different layers of the Church's governing structure, including the general assembly, the ordained deacons committee (ODC), and the board of directors. The ODC consists of the senior pastor and several serving ordained deacons. The board of directors consists of the senior pastor, the secretary, and the financial ministry team leader.

The senior pastor serves as the ex officio chairman of both the ODC and the board of directors. In the senior pastor's absence, the senior associate pastor or the head of deacons, "in that order," takes the senior pastor's place as chairman of both the ODC and the board of directors. Thus, if the Church has no senior pastor and no senior associate pastor, the head of deacons becomes chairman of the ODC and chairman of the board of directors.

In early 2018, the Church's senior pastor retired, leaving the position vacant. The Church began efforts to hire a new senior pastor, a multistep process that

_____

[1] The Church Constitution is written in Korean, but the parties stipulated to an English translation.

2

requires the formation of a hiring committee, the nomination of a candidate, the ratification of the candidate by the officers committee, and then approval by the general assembly.

Defendant Kwon's position as associate pastor was changed to senior associate pastor, and he was asked to temporarily perform the duties of senior pastor until a new senior pastor was hired. This was permissible under the Church Constitution, which states "[a] senior associate pastor may be hired to take over the duties of the senior pastor in his absence."

A year passed, and still no senior pastor was hired. According to Plaintiff Shin, Defendant Kwon "openly interfered with" the search for a new senior pastor because he "wanted to become the senior pastor."

As of early February 2019, the ODC consisted of Defendant Kwon (by virtue of his position as senior associate pastor and the ongoing lack of a senior pastor), plus Plaintiffs Kim, Koo, and Shin, the three ordained deacons serving on the ODC. In mid-February 2019, the ODC met to discuss Kwon's status as senior associate pastor, as well as the lack of progress in hiring a senior pastor. According to the ODC meeting minutes, Plaintiffs, who were three out of the four members of the ODC, voted to demote Kwon from senior associate pastor to associate pastor. They also decided to invite an interim pastor to oversee the senior pastor hiring process and perform the duties of senior pastor. A few weeks later, the ODC (which, in light of Kwon's demotion, now consisted only of Plaintiffs) appointed Pastor Emeritus Chung Jik Park to serve as interim pastor of the Church.

The validity of Kwon's demotion under the Church Constitution is one of the primary issues before us. Its resolution will determine whether Defendant Kwon or Plaintiff Kim is the chairman of the Church's board of directors. As noted, under the Church Constitution, the board of directors normally consists of the senior pastor (or in his absence, the senior associate pastor or the head of deacons), the secretary, and the

3

financial ministry team leader. Thus, before Kwon's demotion, the board of directors consisted of Kwon (by virtue of his position as senior associate pastor and the ongoing absence of a senior pastor), Plaintiff Koo (the Church's secretary), and Plaintiff Shin (the Church's financial team leader). According to Plaintiffs, upon Kwon's demotion from senior associate pastor to associate pastor, Plaintiff Kim (the head of deacons) became chairman of the board of directors, because under the Church Constitution, the head of deacons is chairman of the board in the absence of a senior pastor or senior associate pastor. According to Defendants, because the ODC could not demote Defendant Kwon to associate pastor, Kwon remains senior associate pastor and chairman of the board.

Soon after his demotion to associate pastor, Kwon unilaterally canceled a guest speaker 30 minutes before a church service, which allegedly interfered with the worship. Plaintiffs found his conduct "outrageous and total[ly] unacceptable."

A few weeks later, the ODC (i.e., Plaintiffs) unanimously voted to terminate Kwon's employment with the Church. Plaintiffs and Interim Pastor Park sent Kwon a letter notifying him of his termination, effective immediately. According to Plaintiffs, the main reasons for Kwon's termination were (1) his interference with the hiring of a senior pastor and (2) his canceling the guest speaker.[2]

Plaintiffs filed a complaint against Kwon and others seeking declaratory and injunctive relief under Corporations Code section 9418, which permits "any director or member" of a corporation to file an action to have the superior court "determine the validity of any election or appointment of any director of any corporation." (Corp. Code, § 9418, subd. (a).) Among other things, Plaintiffs sought a declaration they are the duly

---

[2] After learning of his termination, Kwon and others sought to have Kwon reinstated as senior associate pastor and to dismiss Plaintiffs Kim, Koo, and Shin as deacons. The trial court concluded their efforts were ineffective. Because these events do not impact our analysis of the limited issues raised on appeal, we need not discuss them further here.

appointed directors of the Church, and they sought to enjoin Kwon and others from acting as directors of the Church.

After an evidentiary hearing, the trial court issued a 20-page statement of decision in Plaintiffs' favor. It concluded Kwon's "termination by the [ODC] was validly voted upon and became effective March 15, 2019"; Plaintiffs "are the three validly-selected and serving members of the Church's Board of Directors" by virtue of their positions as head of deacons, secretary, and financial ministry team leader; and "none of the Defendants . . . is a duly or validly elected or appointed member of the Church's Board of Directors, and they have no authority to act as such." The court declined to reach the issue of whether there were sufficient reasons to terminate Kwon, noting "[i]t would be improper for this Court to even attempt to determine whether David Kwon was a good and effective pastor, properly carrying out his ministerial duties for this congregation in accordance with Church policy or religious doctrine. See *Singh v. Singh* (2004) 114 Cal.App.4th 1264."

The trial court entered a judgment declaring that the Church's board of directors consisted of Plaintiffs as of July 23 and 24, 2019, the dates of the evidentiary hearing. Defendants appealed.

**DISCUSSION**

The crux of this appeal involves our determining whether Defendant Kwon's demotion to associate pastor and his later termination were valid under the Church Constitution. According to Defendants, the Church Constitution states the ODC may not terminate an associate pastor "due to ministerial policy" unless the senior pastor so requests; since there was no senior pastor in place at the time of Kwon's demotion and termination, the ODC could not validly demote or terminate him. According to Plaintiffs (and the trial court), a different provision of the Church Constitution authorizes the ODC to terminate an associate pastor, *without* consulting the senior pastor, "[i]f any grounds

5

for disqualification are discovered regarding the performance of [the associate pastor's] ministerial duties," and the ODC validly demoted and terminated Kwon under that provision.

We interpret the Church Constitution de novo.  (*Central Coast Baptist Assn. v. First Baptist Church of Las Lomas* (2007) 171 Cal.App.4th 822, 840 (*Central Coast*).)  "However, to the extent that the court below made factual findings by resolving evidentiary disputes, our review of those findings is pursuant to the substantial evidence rule.  [Citation.]  'Under that standard, we must consider all the evidence in the light most favorable to the prevailing parties, giving them the benefit of every reasonable inference, and resolving conflicts in support of the judgment.'"  (*Ibid*.)

In interpreting the Church's Constitution, we "apply[] well established rules of contract interpretation."  (*Central Coast*, *supra*, 171 Cal.App.4th at p. 840.)  "'We consider the [document] as a whole and construe the language in context, rather than interpret a provision in isolation.  [Citation.]  We interpret words in [the document] in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage.  [Citation.]  If [the] language is clear and explicit and does not involve an absurdity, the plain meaning governs.'"  (*Starlight Ridge South Homeowners Assn. v. Hunter-Bloor* (2009) 177 Cal.App.4th 440, 447.)

Chapter 13, Article 3, Section 5 of the Church Constitution governs the "Resignation / Dismissal" of senior associate pastors and associate pastors:[3]  "1) If a pastor wishes to resign, he must turn in letter of resignation to [the] Senior Pastor at least 1 month before.  [¶]  2) If urged to resign due to ministerial policy, the [ODC] shall make

---

[3]     Article 3 refers to "Associate Pastor[s]"; the Church Constitution contains no separate provision regarding "Senior Associate Pastors."  However, Defendants concede Article 3's provisions apply to senior associate pastors and associate pastors alike and Kwon's employment status was governed by Article 3.

the final decision upon the Senior Pastor's request.  [¶]  3) If any grounds for disqualification are discovered regarding the performance of his ministerial duties, the resignation shall be decided upon review by the [ODC]."

Neither the ODC meeting minutes nor the ODC's termination letter to Kwon specify the specific constitutional provision under which Kwon was demoted or terminated.  The trial court found subsection 3 applied and authorized the ODC to demote Kwon to associate pastor and then terminate him altogether.  It reasoned, "S[ubs]ections 1 and 2 have no bearing here, as they set forth the procedures to follow when an Associate Pastor 'wishes to resign' or is 'urged to resign.'  Neither of those things happened here.  Pastor David Kwon was involuntarily terminated."

Defendants contend Kwon's demotion and termination were not governed by subsection 3, but rather by subsection 2.  According to Defendants, Kwon's demotion and termination were "clearly" due to "ministerial policy" (referenced in subsection 2), *not* due to "the performance of his ministerial duties" (referenced in subsection 3).

Determining which subsection applies impacts whether the senior pastor had to "request" the termination.  A termination under subsection 3 does not require the involvement of the senior pastor and is simply "decided upon review by the [ODC]." Under subsection 2, on the other hand, if the associate pastor is "urged to resign due to ministerial policy, the [ODC] shall make the final decision *upon the Senior Pastor's request*." (Italics added.)  According to Defendants, because there was no senior pastor in place and thus no "request" by a senior pastor that the ODC demote or terminate Kwon, the ODC lacked the power to demote or terminate him.

We are not persuaded subsection 2 applies.  The Church Constitution is hardly a model of clarity, but according to the translation provided to the trial court, a key distinction between the three different subsections is the *manner* in which the termination comes about:  subsection 1 applies "[i]f a pastor *wishes* to resign"; subsection 2 applies "[i]f [he is] *urged* to resign due to ministerial policy"; and subsection 3 applies "[i]f any

7

grounds for *disqualification* are discovered regarding the *performance* of his ministerial duties." (Italics added.) In other words, subsection 1 applies when the associate pastor's resignation is entirely voluntary; subsection 2 applies when someone urges him to resign for policy reasons; and subsection 3 applies when an associate pastor is involuntarily terminated due to performance issues. By its plain language, subsection 2 only applies if the associate pastor is "urged to resign"; that is not what occurred here.

Defendants insist Kwon was demoted and terminated due to "ministerial policy" (the phrase used in subsection 2), as opposed to "the performance of his ministerial duties" (the phrase used in subsection 3). According to Defendants, "[t]he matters concerning the hiring of a new Senior Pastor . . . relate to policy, and do not have anything to do with [Kwon's] qualifications, abilities, or performance ministering to the congregation or church members. Rather the issue concerns church politics and policy. Similarly, the scheduling of guest speaker's [*sic*] would seem clearly to fall into this category, a matter of policy not disqualification as a minister."

We disagree. The ODC first demoted Kwon, and then terminated his employment effective immediately, for two reasons: (1) he openly interfered with the ODC's search for a new senior pastor (because he "wanted to become the senior pastor" of the Church); and (2) he interfered with a worship service by canceling a guest speaker at the last minute, conduct which the ODC found to be "outrageous and total[ly] unacceptable." These matters strike us as issues reflecting on Kwon's performance as a pastor. Given its ruling, the trial court evidently agreed. Defendants cite nothing in the record evidencing these matters instead relate to "ministerial policy."

Defendants assert the ODC did not believe Kwon was "disqualified" from performing his ministerial duties, given the fact that the ODC only demoted him initially, rather than terminating him outright. Again, we are not persuaded. Kwon's February demotion suggests the ODC then had concerns about his performance. Kwon's

8

interference with the worship service shortly after his demotion apparently validated those concerns, and the ODC terminated his employment just a few weeks later.

For these reasons, we conclude subsection 3 controls here. Under subsection 3, "[i]f any grounds for disqualification are discovered regarding the performance of his ministerial duties, the resignation shall be decided upon review by the [ODC]." This provision gave the ODC the unilateral power to demote[4] and terminate Kwon if it found his performance of his ministerial duties disqualified him from serving as associate pastor. The ODC therefore acted within the scope of its authority under the Church Constitution when it demoted and terminated Kwon.

Defendants insist that even if subsection (3) applies, a senior pastor still had to request the termination. But that is not what subsection (3) says, and we decline to read such a requirement into the subsection. As the trial court aptly noted, "where the Church's Constitution intended to require ratification for a hiring/dismissal decision, it did so explicitly."

Defendants next contend the trial court erred by "failing to determine whether the [ODC] was authorized to demote or terminate Appellant Kwon under the [Church] Constitution" and "whether the required procedural requirements for demoting or terminating Rev. Kwon were followed." Not so. As stated in its statement of decision, the court expressly determined subsection (3) controls, the ODC "had the authority to" demote and terminate Kwon, and the ODC "properly took those actions."

True, the trial court did not determine whether the ODC had valid *grounds* to demote or terminate Kwon based on his performance of his ministerial duties. But this

---

[4]     Although the Church Constitution does not expressly address the demotion of a senior associate pastor to associate pastor, it expressly authorizes the ODC to *hire* a senior associate pastor or associate pastor and to *terminate* him for performance reasons. Thus, the ODC logically also has the power to demote a senior associate pastor to associate pastor.

is a different question than whether it had the *authority* to do so. And the court was right to tread lightly there. "The establishment clause of the First Amendment to the United States Constitution, as well as its California counterpart (Cal. Const., art. I, § 4), precludes civil courts from adjudicating [civil or] property disputes based on religious doctrine." (*Central Coast, supra,* 171 Cal.App.4th at pp. 840-841; see also *Our Lady of Guadalupe School v. Morrissey-Berru* (2020) __ U.S. __ [140 S.Ct. 2049, 2060, 207 L.Ed.2d 870] ["courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions"].) The court properly refrained from evaluating whether Kwon's performance of his ministerial duties "disqualifi[ed]" him from serving as associate pastor.[5]

"In cases where disputes over civil or property rights are involved in churches of congregational organization, [however,] a court *may* apply neutral principles of law to determine whether the bylaws and rules were being properly observed by those governing the church—for instance, whether meetings were conducted . . . in accordance with the applicable rules or pertinent principles of law." (*Central Coast, supra,* 171 Cal.App.4th at pp. 842-843, italics added.) That is precisely what the trial court did here. We find no error.

---

[5] Under the Church Constitution, the qualifications of an associate pastor include that he "[m]ust . . . meet criteria in the Bible (Timothy 3:1-7, Titus 1:5-9, Peter 5:1-4)." A court obviously cannot and should not attempt to determine whether that qualification is met.

## DISPOSITION

The judgment is affirmed.  Plaintiffs shall recover their costs on appeal.
(Cal. Rules of Court, rule 8.278(a)(1).)


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

11